## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION )<br><br>Plaintiff, )<br><br>v. )<br><br>HOSPITAL HOUSEKEEPING SYSTEMS, LLC, )<br><br>Defendant. ) | Civil Action File No. 21·2134 |

### NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADA), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to **Rodney Roberts, George Rodriquez, Vernestine Gibbs, Kathryn Gill, Debra Parry,** and a class of former employees who were adversely affected by such practices.

As alleged with greater particularity below, Defendant Hospital Housekeeping Systems, LLC (Defendant or HHS) subjected **Rodney Roberts, George Rodriquez, Vernestine Gibbs, Kathryn Gill, Debra Parry** and a class of former employees to an unlawful qualifications standard, an Essential Functions Test, that screened out or tended to screen out a class of individuals with disabilities and subjected them to an adverse employment action, termination, after they failed the Essential Functions Test. HHS's use of the Essential Functions Test adversely impacts employees with disabilities and constitutes a qualification standard that unlawfully screens out or tends to

1

screen out a class of individuals with disabilities. The Commission alleges the Essential Functions Test is not job-related and consistent with business necessity.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to §107(a) of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12117(a), which incorporates by reference §§706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3) and  pursuant to § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were and continue to be committed within the jurisdiction of the United States District Court for the Western District of Arkansas.

## PARTIES

3.      Plaintiff Equal Employment Opportunity Commission (Commission) is the agency of the United States of America charged with the administration, interpretation, and enforcement of Titles I and V of the ADA and is expressly authorized to bring this action by §107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference §§706(f)(1) and (3) and §707 of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3) and § 2000e-6.

4.      Defendant Hospital Housekeeping Systems, LLC (HHS), a foreign limited liability company headquartered in Dripping Springs, Texas, operates in hospitals in approximately thirty States throughout the United States. HHS operates housekeeping services at facilities in Fort Smith, Helena-West Helena, Forrest City, and Little Rock, Arkansas and in Memphis, Dyersburg, and Clarksville, Tennessee, and Olive Branch, MS. At these hospitals, HHS required the Essential Functions Test that was not job-related and consistent with business necessity.

2

5.      At all relevant times, HHS has continuously been an employer engaged in an industry affecting commerce under §§101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

6.      At all relevant times, HHS has been a covered entity under §101(2) of the ADA, 42 U.S.C. § 12111(2).

7.      At all relevant times, HHS has continuously been doing business in the state of Arkansas and across the United States and has continuously had at least 15 employees.

## ADMINISTRATIVE PROCEDURES

8.      More than thirty days prior to the institution of this lawsuit, Rodney Roberts, George Rodriquez, Vernestine Gibbs, Kathryn Gill, and Debra Parry filed charges with the Commission alleging violations of the ADA by HHS.

9.      On February 12, 2021, the Commission issued to HHS Letters of Determination finding reasonable cause to believe HHS violated the ADA with respect to Rodney Roberts, George Rodriquez Vernestine Gibbs, Kathryn Gill, Debra Parry, and a class of aggrieved individuals and invited HHS to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10.      The Commission engaged in communications with HHS to provide HHS the opportunity to remedy the discriminatory practices described in the Letters of Determination.

11.      The Commission was unable to secure from HHS a conciliation agreement acceptable to the Commission.

12.      On April 6, 2021, the Commission issued to HHS Notices of Conciliation Failure advising HHS that the Commission was unable to secure from HHS a conciliation agreement acceptable to the Commission.

13.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

14.     HHS was founded in 1975 and began as housekeeping support to the health care industry. HHS now provides a variety of support services to hospitals as well as to other facilities throughout the United States, including, but not limited to Arkansas, Tennessee and Mississippi. The job descriptions for housekeeper and floor technician are the same.

15.     On or about 2015, HHS began requiring its employees to take an Essential Functions Test (EFT), a qualification standard. Prior to the EFT, HHS used a physical screening test.

16.     The elements of the EFT allegedly measure the employees' strength, flexibility, dexterity, ability to lift, balance, and mobility as demonstrated by different activities/exercises.

17.     HHS requires employees to take and pass the EFT at hire, upon return from a medical leave of absence, annually, and after a workplace injury.

18.     Examples on the test include having the ability to bend and touch toes 10 times; hold 20 pounds at arms length from the body for ten seconds; lunging backward and lowering the back knee to the floor repeating with each leg; squatting by completing five knee bends/squats; standing on one foot for ten seconds; ability to pick up items and squat five times; and kneel on one knee five times with each leg.

19.     HHS terminates employees who do not pass all portions of the EFT.

20.     HHS terminates employees who do not pass all portions of the EFT even if the employees can perform the essential functions of the job and were performing the essential functions of the job prior to the EFT.

21.     The EFT unlawfully screens out or tends to screen out an individual with a disability and a class of individuals with disabilities.

22.     HHS unlawfully used the EFT as a qualification standard to screen out individuals with disabilities.

23.     HHS did not validate its EFT as required by the ADA.

24.     HHS's EFT is not job-related and consistent with a business necessity as required by the ADA.

## STATEMENT OF CLAIMS

25.     Since at least January 2015, HHS engaged in unlawful employment practices at Sparks Hospital in Fort Smith, Arkansas, and at other hospitals throughout the United States in violation of Title I of the ADA, 42 U.S.C. §§ 12112.

26.     The unlawful employment practices include using a qualification standard, the EFT, that screens out or tends to screen out individuals with disabilities who take HHS's EFT and who fail certain sections of HHS's EFT because of their disabilities and then terminating those employees who failed the EFT.

## CHARGING PARTY RODNEY ROBERTS

27.     HHS hired Roberts as a floor technician at John Peter Smith Hospital in Fort Worth, Texas, around January 1, 2014.

    a.     Roberts had worked as a floor technician at the hospital since around April 2012.

    b.     Roberts has diabetes, diabetic neuropathy, osteoarthritis, and plantar fibromas.

    c.     Roberts has disabilities which substantially limited, at a minimum, his endocrine function and ability to stand and walk.

    d.     Roberts satisfactorily performed the essential functions of his floor technician position when he worked for HHS.

5

e.  Around April 2015, HHS informed Roberts he would need to undergo an EFT to continue his employment.

f.  Roberts was a qualified individual with a disability under 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8).

g.  In June 2015, Roberts provided HHS a statement from his physician explaining that his medical conditions, diabetes, diabetic neuropathy, osteoarthritis, and plantar fibromas would impact his ability to pass the EFT.

h.  HHS told Roberts on or about July 31, 2015, if he did not take the EFT, HHS would discharge him.

i.  HHS discharged Roberts on or about July 31, 2015.

j.  HHS discharged Roberts because of his disabilities and due to his refusal to take the EFT.

k.  HHS did not discharge Roberts because of any issues in performing the floor technician job.

l.  HHS used a qualification standard, the EFT, to screen Roberts out because of his disabilities and subjected Roberts to an adverse employment action, termination.

m.  HHS never determined at the time it discharged Roberts that he posed a direct threat to the health or safety of himself or to other individuals in the workplace.

## CHARGING PARTY VERNESTINE GIBBS

28.  HHS hired Gibbs as a housekeeper at Southeastern Hospital in Kingsland, Georgia, around November 2014.

a.  Gibbs has arthritis, chronic pain syndrome, and fibromyalgia.

b.     Gibbs' disabilities substantially limit, at a minimum, the major life activities of walking, standing, and sleeping.

c.     Gibbs satisfactorily performed the essential functions of her housekeeping job while employed by HHS.

d.     Gibbs is a qualified individual with a disability under 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8).

e.     Around May 23, 2016, HHS required Gibbs to take and pass the EFT.

f.     Gibbs failed the EFT due to her disabilities.

g.     HHS discharged Gibbs due to her disabilities and her inability to pass the EFT and not because of any performance issues with the housekeeping position.

h.     HHS used a qualification standard, the EFT, to screen Gibbs out because of her disabilities and subjected Gibbs to an adverse employment action, termination.

i.     HHS never determined at the time it discharged Gibbs that she posed a direct threat to the health or safety of herself or to other individuals in the workplace.

**CHARGING PARTY GEORGE RODRIGUEZ**

29.     HHS hired Rodriguez as a floor technician at Christus Santa Rosa Hospital in San Antonio, Texas, around October 21, 2013.

a.     When hired, HHS administered a physical screening checklist to Rodriguez.

b.     The physical screening required Rodriguez to perform nine lifting and push and pull tests.

c.     Rodriguez successfully performed the nine lifting and push and pull portions of the physical screening.

d.     Rodriguez had diabetes, hypertension, and a previous knee surgery.

7

e.       Rodriquez's disabilities, at a minimum, substantially limited the major life activities of his endocrine function, walking, standing, bending, and eating.

f.       Rodriguez satisfactorily performed the essential functions of his floor technician position.

g.       Rodriguez was a qualified individual with a disability under 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8).

h.       Around June 28, 2016, HHS informed Rodriguez that it required all employees to take and pass the EFT annually.

i.       Rodriguez took the EFT and failed due to his disabilities.

j.       HHS did not discharge Rodriguez because of issues relating to his ability to do the essential job functions of the floor technician position.

k.       HHS used a qualification standard, the EFT, to screen out Rodriguez because of his disabilities and subjected Rodriguez to an adverse employment action, termination.

l.       HHS never determined at the time it discharged Rodriguez that he posed a direct threat to the health or safety of himself or to other individuals in the workplace.

## <u>CHARGING PARTY KATHRYN GILL</u>

30.       HHS hired Gill as a housekeeper in the emergency room at Lake Norman Hospital in Mooresville, North Carolina, around September 2012.

a.       When hired, Gill was legally blind as she lacked any peripheral vision, a condition since the age of two or three.

b.       Upon her hire, Gill completed a medical history questionnaire where she checked she had vision and arthritis issues.

c. Gill has disabilities which substantially limit, at a minimum, her major life activities of seeing, walking, standing, bending, and reaching.

d. Gill satisfactorily performed the essential functions of her housekeeping job while employed by HHS.

e. Gill is a qualified individual with a disability under 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8).

f. HHS never required that Gill take the EFT until Gill suffered an on-the-job injury around November 11, 2017.

g. Around November 14, 2017, HHS required that Gill take the EFT.

h. Gill failed the EFT.

i. HHS used a qualification standard, the EFT, to screen out Gill because of her disabilities and subjected Gibbs to an adverse employment action, termination.

j. HHS never determined at the time it discharged Gill that she posed a direct threat to the health or safety of herself or to other individuals in the workplace.

**CHARGING PARTY DEBRA PARRY**

31.   HHS hired Debra Parry as assistant director at the University of Colorado Hospital in Denver, Colorado, around April 20, 2019.

a. Upon her hire Parry completed a medical history questionnaire where she listed that she had a total knee replacement on May 1, 2016.

b. Following her surgery, Parry has a medical condition that constitutes a disability.

c. Parry's disability substantially limits, at a minimum, the major life activities of walking, standing, performing manual tasks, and bending.

d.      Parry was satisfactorily performing the essential job functions of the assistant
        director position.

e.      Parry was a qualified individual with a disability under 42 U.S.C. § 12102(2) and
        42 U.S.C. § 12111(8).

f.      Around May 12, 2019, Parry traveled to Houston, Texas for training.

g.      On about May 14, 2019, HHS informed Parry she had to take the EFT.

h.      HHS administered the EFT to Parry.

i.      Parry failed the EFT because she could not kneel.

j.      The vice president told Parry that he would not make exceptions for Parry's
        disability.

k.      The vice president told Parry that she was a liability and could not work for HHS
        with her disability.

l.      Although Parry's assistant director position lacked any physical demands, HHS
        required that Parry demonstrate that she could perform the duties of the
        housekeeping position.

m.      HHS did not discharge Parry because of any performance issues relating to the
        assistant director position.

n.      HHS used a qualification standard, the EFT, to screen out Parry because of her
        disability, and subjected Parry to an adverse employment action, termination.

o.      HHS never determined at the time it discharged Parry that she posed a direct threat
        to the health or safety of herself or to other individuals in the workplace.

## CLASS MEMBERS' CLAIMS WITH DISABILITIES

32.     HHS subjected a class of other individuals with disabilities, the Claimants, to termination after they failed the EFT.

a.     These individuals included, amongst others, Levina Harris,  Mary Williams, and Raymond Licea.

b.     These disabilities included rheumatoid arthritis, lupus, hypertension, diabetes, and a lifting restriction.

c.     The Claimants were, at a minimum, substantially limited in the endocrine function and the major life activities of standing, walking, bending, lifting, and eating.

d.     These individuals, like Charging Parties Vernestine Gibbs, Rodney Roberts, George Rodriguez, Kathryn Gill, and Debra Parry, were satisfactorily performing the essential job functions of their housekeeping, floor technician, and dietary positions without incident or issue.

e.     HHS required that the Claimants take the EFT.

f.     The Claimants were qualified individuals with a disability under 42 U.S.C. §§ 12102(2) and 42 U.S.C. § 12111(8).

g.     The Claimants could not pass the EFT because of their physical impairments associated with their disabilities.

h.     Although the Claimants performed the essential functions of their jobs, the Claimants were unable to pass certain sections of the EFT, and HHS terminated their employment.

i.     HHS used a qualification standard, the EFT, to screen out the Claimants because of their disabilities and subjected them to an adverse employment action, termination.

j.     HHS never determined at the time it discharged the Claimants that the Claimants posed a direct threat to the health or safety of themselves or to other individuals in the workplace.

## FIRST CLAIM FOR RELIEF

## USING A DISCRIMINATORY QUALIFICATION STANDARD

33.     The Commission restates and incorporates by reference all the foregoing paragraphs.

a.     Since at least January 2015, HHS used a qualification standard, an EFT, that screened out or tended to screen out individuals with disabilities.

b.     HHS requires that all housekeeping, dietary, and floor technicians take the EFT.

c.     HHS requires all employees, including employees with disabilities, to pass all portions of the EFT.

d.     HHS does not make exceptions for employees who are satisfactorily performing all the essential job functions of the position.

e.     HHS applied and used the EFT as qualification standards that screen out or tend to screen out individuals with disabilities, and the EFT is not job-related and consistent with business necessity in violation of 42 U.S.C. § 12112(a) and (b)(6).

f.     The policies and practices complained of in the preceding paragraphs deprive Charging Parties Rodney Roberts, Vernestine Gibbs, George Rodriquez, Kathryn Gill, Debra Parry, and Class members Levina Harris, Mary Williams, Raymond

Licea, and other similarly situated aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

g.     The unlawful employment practices complained of in the foregoing paragraphs above were intentional.

h.     The unlawful employment practices complained of in the foregoing paragraphs above were done with malice or with reckless indifference to the federally protected rights of Charging Parties Rodney Roberts, Vernestine Gibbs, George Rodriquez, Kathryn Gill, Debra Parry, and Class members Levina Harris, Mary Williams, Raymond Licea, and other similarly situated aggrieved individuals.

i.     The unlawful employment practices complained of in the foregoing paragraphs are continuous and ongoing.

## SECOND CLAIM FOR RELIEF

## DISCHARGE

34.     The Commission restates and incorporates by reference all the foregoing paragraphs.

a.     Since at least January 2015, HHS has violated the ADA by terminating employees with disabilities who failed to pass the EFT because of their disabilities, 42 U.S.C. §§ 12112(a) and (b)(6).

b.     Charging Parties Rodney Roberts, Vernestine Gibbs, George Rodriquez, Kathryn Gill, Debra Parry, and Class members Levina Harris, Mary Williams, Raymond Licea, and other similarly situated aggrieved individuals are qualified individuals with disabilities.

13

c.      HHS discharged Charging Parties Rodney Roberts, Vernestine Gibbs, George Rodriquez, Kathryn Gill, Debra Parry, and Class members Levina Harris, Mary Williams, and Raymond Licea, and other similarly situated aggrieved individuals because of their disabilities.

d.      HHS discharged Roberts after he presented a note from his doctor seeking to exclude him from the EFT because his disabilities, diabetes, diabetic neuropathy, osteoarthritis and plantar fibromas, would impact his ability to pass certain portions of the EFT.

e.      Although Roberts performed the essential functions of the floor technician job, HHS discharged Roberts due to his inability to take and pass the EFT.

f.      Although Gibbs performed the essential functions of the housekeeping job, HHS discharged Gibbs after she failed to pass all portions of the EFT because of her disabilities.

g.      Although Rodriguez performed the essential functions of the floor technician job, HHS discharged Rodriguez because of his inability to pass all portions of the EFT.

h.      Although Gill performed the essential functions of the housekeeping job, HHS discharged Gill because she could not pass all portions of the EFT.

i.      HHS told Parry that it could not make exceptions for her disability, she was a liability to HHS, and she could not work for HHS with her disability.

j.      Although Parry could perform the essential functions of her position, HHS discharged Parry because she could not pass all portions of the EFT.

k.      Although Harris performed the essential functions of the housekeeping position, HHS discharged Harris because she could not pass all portions of the EFT.

14

l.    Although Williams performed the essential functions of the housekeeping position, HHS discharged Williams because she could not pass all portions of the EFT.

m.    Although Licea performed the essential functions of the floor technician position, HHS discharged Licea because he could not pass all portions of the EFT.

n.    HHS discharged Charging Parties Rodney Roberts, Vernestine Gibbs, George Rodriquez, Kathryn Gill, Debra Parry, and Class members Levina Harris, Mary Williams, Raymond Licea, and other similarly situated aggrieved individuals who failed the EFT, but who successfully performed the essential functions of their position.

o.    When HHS discharged Charging Parties Rodney Robert, Vernestine Gibbs, George Rodriquez, Kathryn Gill, Debra Parry, and Class members Levina Harris, Mary Williams, Raymond Licea, and other similarly situated aggrieved individuals, HHS never conducted an individualized assessment to determine whether they posed a direct threat to the health or safety of themselves or others in the workplace.

p.    The unlawful employment practices complained of in the foregoing paragraphs above were intentional.

q.    The unlawful employment practices complained of in the foregoing paragraphs above were done with malice or with reckless indifference to the federally protected rights of Charging Parties Rodney Roberts, Vernestine Gibbs, George Rodriquez, Kathryn Gill, Debra Parry, and Class members Levina Harris, Mary Williams, Raymond Licea, and other similarly situated aggrieved individuals.

r.    The unlawful employment practices complained of in the foregoing paragraphs are continuous and ongoing.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining HHS, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates based on disability

B.      Order HHS to institute and carry out policies, practices and programs which provide equal employment opportunities for individuals with disabilities or who are regarded as having disabilities and which eradicate the effects of its past and present unlawful employment practices.

C.      Order HHS to cease using qualification standards such as the  EFT, other employment tests, or other selection criteria that screens out or tends to screen out individuals with disabilities.

D.      Order HHS to discontinue its practice of discharging employees with disabilities for failure to pass the EFT.

E.      Grant a permanent injunction enjoining HHS, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from discriminating against individuals with disabilities.

F.      Grant a permanent injunction enjoining HHS, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from interfering with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of any right protected by the ADA.

G.     Grant a judgment requiring HHS to pay appropriate back wages in an amount to be determined at trial and prejudgment interest to individuals whose wages are being unlawfully withheld as a result of the acts complained of above.

H.     Order HHS to make whole all individuals adversely affected by the unlawful practices described above, by providing the affirmative relief necessary to eradicate the effects of its unlawful practices, including but not limited to instatement, reinstatement, provide front pay in lieu of reinstatement, or otherwise make whole individuals denied employment because of their disabilities.

I.     Order HHS to make whole **Rodney Roberts, George Rodriquez, Vernestine Gibbs, Kathryn Gill, Debra Parry, Levina Harris, Mary Williams, Raymond Licea,** and all similarly situated individuals by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

J.     Order HHS to pay **Rodney Roberts, George Rodriquez, Vernestine Gibbs, Kathryn Gill, Debra Parry, Levina Harris, Mary Williams, Raymond Licea,** and all similarly situated individuals, punitive damages for its malicious and reckless conduct described above in amounts to be determined at trial.

K.     Grant such further relief as the Court deems necessary and proper in the public interest.

L.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

GWENDOLYN YOUNG REAMS
Acting General Counsel

*/s/Faye A. Williams*
FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 11730

*/s/Amy F. Black*
Amy F. Black
Supervisory Trial Attorney
TN Bar No. 016102

*/s/ Michelle B. Sisco*
Michelle B. Sisco
Trial Attorney
TN Bar No. 035682

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
1407 Union Avenue, Suite 900
Memphis, TN 38104
Telephone (901) 685-4609
Telephone (901) 685-4606
Telephone (901) 701-6447
faye.williams@eeoc.gov
amy.black@eeoc.gov
michelle.sisco@eeoc.gov


*/s/ Pamela B. Dixon*
PAMELA DIXON
Senior Trial Attorney
AR Bar No. 95085

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
820 Louisiana St., Suite 200
Little Rock, AR 72201
Telephone (501) 900-6145
pamela.dixon@eeoc.gov