UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION                                                                                             PLAINTIFF

v.                                              No. 2:21-CV-2134

HOSPITAL HOUSEKEEPING SERVICES, LLC                                                 DEFENDANT

**OPINION AND ORDER**

Before the Court are cross-motions (Docs. 26, 29) for summary judgment filed by Plaintiff Equal Employment Opportunity Commission ("EEOC") and Defendant Hospital Housekeeping Services, LLC ("HHS"). The Court has considered the parties' respective briefs, exhibits, and statements of facts in support of and opposing the motions. (Docs. 26–31, 36–40, 44). For the reasons given below, EEOC's partial summary judgment motion will be GRANTED, and HHS's summary judgment motion will be DENIED IN PART as to the laches defense. The Court will reserve ruling on the remainder of HHS's motion until after the summary judgment hearing currently scheduled for April 17, 2023.

**I.     Background[1]**

This case arises out of HHS's use of an Essential Function Test (EFT) to evaluate its employees' ability to perform the essential functions of their jobs. HHS supports housekeeping services at hospitals throughout the United States, including in Arkansas. (Doc. 5, ¶ 14). HHS employs housekeepers and floor technicians who clean and sanitize hospital rooms. *Id.* These two positions' job descriptions list identical essential functions, which include walking, standing,

---

[1] Since this Opinion and Order only addresses the part of HHS's summary judgment motion related to the laches defense and the EEOC's motion, the Court will only recite facts necessary to resolve those issues.

1

reaching, and being able to lift up to 40 pounds. (Doc. 40, ¶ 1). HHS prioritizes safety due to the job's physically demanding nature. *See, e.g.*, Doc. 29-13, HHS Safety Policy No. 5.

In 2015, HHS used an EFT based on the housekeeping and floor tech job descriptions "to determine whether a person could safely perform the applicable job duties." (Doc. 5, ¶ 15). HHS states it developed the EFT in response to being "inundated with injury activity to jobsite employees." (Doc. 31, ¶¶ 13–15). Jeff Totten, now HHS's President for Compliance and Risk, developed the current and previous versions of the EFT. (Doc. 40, ¶ 26). HHS required its housekeepers and floor techs to take the EFT; starting in 2018, HHS also required managers and supervisors to take the EFT. *Id.* ¶ 22. Mr. Totten testified about the EFT's implementation and application. (Docs. 29-11, 38-15). Generally, if an employee failed their EFT, HHS terminated that employee. *See id.*[2]

Numerous terminated employees began filing charges with the EEOC. Rodney Roberts filed the first charge in September 2015. (Doc. 29-25). Other employees filed charges from 2016 through October 2019. *Id.* The EEOC began investigating the charges in 2016. (Doc. 38-35, p. 2). After a thorough investigation, the EEOC sued HHS, alleging that the EFT screened out or tended to screen out individuals with disabilities and subjected them to an adverse employment action after failing the EFT. (Doc. 37, ¶ 2). The EEOC sues on behalf of five former employees who filed EEOC charges[3] and a class of terminated employees that did not file charges. (Doc. 39, p. 1–2) (collectively, "Claimants").

---

[2] This is a simplification of Mr. Totten's testimony, but the Court need not delve into the specifics to resolve the issues presented in this Opinion and Order.

[3] The charging parties are Rodney Roberts, Kathryn Gill, George Rodriguez (deceased), Vernestine Gibbs, and Debra Parry. (Doc. 39, p. 2).

**II.    Legal Standard**

On a summary judgment motion, the movant has the burden to show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. The same standard applies to cross-motions for summary judgment, with each motion reviewed in its own right and each opposing party "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). Once the movant has met its burden, the non-movant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). For there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**III.   Analysis**

The EEOC seeks partial summary judgment on HHS's affirmative defense that the EEOC failed to conciliate. (Doc. 26, p. 1). HHS moved for summary judgment on the EEOC's ADA claims. (Doc. 29, p. 1–2). The Court will first address the EEOC's motion, then HHS's laches argument.

    **A. Duty to Conciliate**

The EEOC seeks summary judgment on HHS's affirmative defense that the EEOC failed to meet its statutory burden to conciliate. *See* Doc. 5, ¶ 43. Before bringing a lawsuit, if the EEOC finds there is reasonable cause to believe a discrimination charge, "[the EEOC] shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). If the conciliation efforts fail, then the

EEOC can sue the employer.  *Id.* § 2000e-5(f)(1).  HHS alleges the EEOC did not conciliate in good faith.

This Court's review of the duty to conciliate is "narrow" and "barebones."  *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 494–95 (2015).  This limited review reflects the "abundant discretion the law gives the EEOC to decide the kind and extent of discussions appropriate in a given case." *Id.* at 495.  Although HHS alleges the EEOC did not conciliate in good faith, the Supreme Court has rejected a good-faith standard.  *Id.* at 492.  Instead, to perform its conciliation obligations, the EEOC must complete two steps.  It must first "inform the employer about the specific allegation . . . describ[ing] both what the employer has done and which employees (or what class of employees) have suffered as a result."  *Id.* at 494.  Second, the EEOC must "engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice."  *Id.*  The EEOC typically informs the employer of the specific allegations in a reasonable cause letter.  *Id.*

The undisputed record evidence shows that the EEOC has followed this process exactly.  The director of the EEOC's Little Rock office provided an affidavit that detailed the commission's conciliation efforts.  (Doc. 28-1).  In response, HHS admitted that the EEOC mailed determination letters regarding the five charging parties in February 2021.  (Doc. 37, ¶ 4).  Those letters informed HHS that the EEOC found reasonable cause that HHS's EFT was a discriminatory qualification standard that screened out, or tended to screen out, individuals with disabilities.  *Id.* ¶ 5.  HHS also admitted that both parties met and exchanged letters in early March 2021 to engage in informal discussions.  *Id.* ¶¶ 7–8.  Because HHS admitted to these facts, there cannot be any dispute that the EEOC met its statutory duty.

HHS invites the Court to conduct a deeper review of the parties' conciliation efforts than is required under *Mach Mining*. HHS would have the Court evaluate what each party said during their conciliation efforts. *See* Doc. 36, p. 4–5. But during review of the duty to conciliate, "a court looks only to whether the EEOC attempted to confer about a charge, and not to what happened (i.e., statements made or positions taken) during those discussions." *Mach Mining*, 575 U.S. at 494. The Court declines HHS's invitation to take a deep dive into the parties' conciliation talks.

A sworn declaration from the EEOC detailing its conciliation efforts, absent credible evidence disputing the efforts from the employer, is sufficient to show the EEOC met its statutory obligations. *Id.* at 494–95. The EEOC provided such an affidavit, and HHS did not provide its own credible evidence. Instead, as noted above, HHS largely admitted the facts about EEOC's conciliation efforts. On the undisputed record, HHS did not show a genuine dispute of material fact which would allow it to present its affirmative defense of failure to conciliate. Thus, the Court grants the EEOC's partial motion for summary judgment because the EEOC met its statutory duty to conciliate.

### B. Laches

HHS argues that the Court should grant summary judgment on Roberts, Gibbs, Rodriguez, Gill, and the class's ADA claims based on laches.[4] Laches is a flexible doctrine left to the district court's discretion. *Whitfield v. Anheuser-Busch, Inc.*, 820 F.2d 243, 245 (8th Cir. 1987). To sustain a laches defense, the defendant must show "(1) the plaintiff unreasonably and inexcusably delayed filing the lawsuit and (2) prejudice to the defendant resulted from the delay." *Brown-Mitchell v. Kan. City Power & Light Co.*, 267 F.3d 825, 827 (8th Cir. 2001). No length of delay

---

[4] Laches means "unreasonable delay in pursuing a right or claim—almost always an equitable one—in a way that prejudices the party against whom relief is sought. []Also termed sleeping on rights." *Laches*, Black's Law Dictionary (11th ed. 2019).

is *per se* unreasonable, so the Court will look to all the facts to evaluate the reasonableness of any delay. *EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 857 (8th Cir. 1978).

The five charging parties filed their charges between September 2015 and October 2019. (Doc. 29-25). Three other parties—Yracheta, Hollingshead, and Velasco—filed charges in 2016 and 2019. (Doc. 38-19, pp. 14–16). The EEOC began its investigation in November 2016. (Doc. 38-35, p. 2). The EEOC filed this lawsuit in August 2021. (Doc. 2). That means there was just under six years between the first charge and this lawsuit and just under five years between the start of the EEOC's investigation and the lawsuit. As the EEOC can best explain the delay, the Court will consider the EEOC's explanation. *See Liberty Loan Corp*, 584 F.2d at 858.

EEOC investigators worked through the entire period on the investigation, communicating regularly with HHS employees or counsel for HHS. *See* Docs. 39-19 (Fier Affidavit), 39-35 (investigative file documents). Ms. Fier, at the time a lead systemic investigator, was responsible for determining whether a single charge of discrimination could affect a class of individuals. (Doc. 39-19, ¶ 4). The bulk of her investigation occurred from 2017 to October 2020. *Id.* ¶ 16. During that time, HHS caused some of the delay because the EEOC repeatedly requested missing information. *See* Doc. 39-35, p. 4–5, 7, 13, 17. Four months after the investigation closed, the EEOC began the conciliation process with HHS.

The Court cannot say the EEOC unreasonably or inexcusably delayed filing this suit. In two cases HHS relies on, courts found private plaintiffs caused unreasonable delays when they failed to contact investigative agencies regarding their claims. *Brown-Mitchell*, 267 F.3d at 827 (plaintiff contacted investigative agency five times in six years); *Whitfield*, 820 F.3d at 244–45 (laches appropriate when case sat "dormant for almost ten years" after the EEOC investigated a charge). Here, the record evidence does not show that the investigation sat dormant for any large

period.  *See* Docs. 39-19 (Fier Affidavit), 39-35 (investigative file documents).  Due to this, the Court cannot say the EEOC unreasonably or inexcusably delayed filing this suit.

Even if the delay was unreasonable or inexcusable, HHS has not shown that it suffered the necessary prejudice to sustain a laches defense.  Defendants typically show prejudice by loss of documentary evidence and unavailability of witnesses.  *Whitfield*, 820 F.3d at 245.  HHS asserts that it has shown "demonstrable prejudice . . . through increased potential backpay liability and limited access to management witnesses and personnel records." (Doc. 30, p. 31).  To support its argument, HHS points to the declaration of its Chief People Officer, Ms. Fier's investigative memorandum, and two of the claimants' depositions.  (Docs. 29-9, 29-10, 29-12, 29-16).  Specifically, HHS states it does not have the class members' records because HHS changed its personnel records system, which led to it losing inactive employee files.  (Doc. 29-12, ¶ 3–4).  HHS also states that the former employees' lack of memory about certain details has prejudiced its ability to defend this matter.

The Court will first address the potential witnesses' lack of memory.  HHS points to claimants Sidwell and Williams' depositions.  (Docs. 29-9, 29-10).  In their depositions, those claimants could not recall the specific names of the supervisors who gave the EFTs or certain details about when the EEOC contacted them about the investigation.  *Id.*  HHS fails to show how the former employees' fuzzy recollection of those details prejudices the company's defense.  *Cf. EEOC v. Stan Koch & Sons Trucking, Inc.*, 557 F. Supp. 3d 884, 900 (D. Minn. August 30, 2021) (denying laches when the missing details are not material).  When the Eighth Circuit has affirmed laches defenses, multiple crucial defense witnesses were either unavailable or had forgotten key details.  *See, e.g.*, *Liberty Loan Corp.*, 584 F.2d at 858 (company only had 5 of 145 employees still at the relevant job site); *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 808 (8th Cir. 1979)

7

(key defense witnesses had retired, transferred, been fired, or died). Unlike those cases, HHS has not explained which of its key witnesses are unavailable or lack the memory necessary to support its defense. Therefore, the Court is not convinced HHS has shown a lack of witnesses has prejudiced its defense.

The Court will next address the loss of class members' records. HHS had an obligation to retain personnel records related to the charges under 29 C.F.R. § 1602.14. The Hollingshead charge indicated she was filing a charge on behalf of herself "and all other similarly-situated." (Doc. 38-36, p. 1). That charge also cited the above regulation requiring records preservation. *Id.* at 3. HHS argued in its reply that the Hollingshead charge is not relevant because she is not a claimant. Doc. 44, p. 4–5. That argument is unconvincing in light of the regulation, which requires employers to retain "all personnel record[s] relevant to the charge" after a charge has been filed. 29 C.F.R. § 1602.14. Those records include, for example, "personnel or employment records relating to the aggrieved person *and to all other employees holding positions similar to that held or sought by the aggrieved person.*" *Id.* (emphasis added). This means that each of the charges, with or without referencing a class, triggered the duty to retain the class's records. HHS's argument that it is prejudiced by its own failure to retain the records is not convincing. *See EEOC v. Great Atl. & Pac. Tea Co.*, 735 F.2d 69, 84 (3d Cir. 1984) (holding the same).

HHS last argues that its exposure to backpay liability has prejudiced the company. HHS relies on an out-of-circuit district court case to support its backpay argument. *See EEOC v. Peterson, Howell & Heather, Inc.*, 702 F. Supp. 1213, 1224 (D. Md. 1989). However, the Eighth Circuit has rejected arguments that paying lost wages by itself is sufficient for a laches defense. *Goodman*, 606 F.2d at 808. Because the Court has not found prejudice in any other form, the Court will not find sufficient prejudice to sustain a laches defense based on backpay liability alone.

In sum, the Court is not convinced that HHS has met its burden on either the delay or prejudice prongs of a laches defense. Because of this, the Court will not grant summary judgment based on laches.

**IV.     Conclusion**

IT IS THEREFORE ORDERED that the EEOC's partial motion for summary judgment is GRANTED. IT IS FURTHER ORDERED that HHS's motion for summary judgment is DENIED IN PART as to the laches argument. The Court will reserve ruling on the remainder of HHS's motion until after the summary judgment hearing.

IT IS SO ORDERED this 9th day of March, 2023.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE